IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL ENARNACION-RIVERA, | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAYMOND M. LAWLER, et al., | : | No. 10-3685 |
| Respondents. | : | |
| | : | |

**Norma L. Shapiro, J.**                                                                                        **March 27, 2013**

## MEMORANDUM

Petitioner Daniel Encarnacion-Rivera ("Encarnacion-Rivera"), a prisoner at the State Correctional Institution at Huntingdon, filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 on June 30, 2010[1] in the United States District Court for the Middle District of Pennsylvania. By order of July 26, 2010, the petition was transferred to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a) and then referred to United States Magistrate Judge Jacob P. Hart who issued a Report and Recommendation ("R&R") that the petition be denied.

Encarnacion-Rivera filed timely objections. He objects that: 1) the evidence presented at trial was insufficient to support his conviction; and 2) the Commonwealth's use of a chart at trial rendered his trial fundamentally unfair and violated his due process rights. He requests an evidentiary hearing. Judge Hart's R&R will be approved and adopted; Encarnacion-Rivera's objections will be overruled; and the petition will be denied.

---

[1] The Clerk of Court docketed Petitioner's habeas petition on July 7, 2010. Petitioner is a pro se inmate, so his petition is deemed filed on the date he submitted it to prison officials for mailing, June 30, 2010. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

1

**BACKGROUND**

I.     **Factual History**

In 2005, Encarnacion-Rivera was arrested as part of a state investigation of a cocaine-trafficking ring based in Reading, Pennsylvania. *Commonwealth v. Encarnacion-Rivera,* No. 2225 MDA 2006, slip. op. at 2-4 (Pa. Super. Ct. March 14, 2008). Encarnacion-Rivera was tried before a jury in the Court of Common Pleas for Berks County; the Honorable Linda K. M. Ludgate presided. Notes of Testimony ("N.T."), Aug. 28, 2006 - Sep. 1, 2006.

The facts developed at trial reveal that Encarnacion-Rivera contacted a high-level drug dealer, Jacobo Blanco-Garcia ("Blanco-Garcia"), on several different occasions in an effort to arrange for "jobs" and drugs. N.T. at 131, 875. In April 2005, petitioner contacted Blanco-Garcia in an effort to purchase 250 grams of cocaine. N.T. at 876. Following the April 2005 phone call, Blanco-Garcia instructed his assistant, Sandro Rojas, to bring the requested 250 grams of cocaine to a meeting place in Reading, Pennsylvania on April 5, 2005. *Id.* at 875 - 76. Blanco-Garcia also testified he had delivered 250 grams of cocaine to Encarnacion-Rivera on a date prior to the April 2005 call. *Id.* at 938. These facts were corroborated by the testimony of Sandro Rojas; State Trooper Jonathan Kinsey also testified that he observed the April 5, 2005 meeting between Sandro Rojas and Encarnancion-Rivera. State Trooper Troy Greenawald offered expert testimony that when an individual purchases more than 100 grams of cocaine, it is likely for distribution rather than personal use. *Id.* at 340 - 41.

On September 12, 2006, Encarnacion-Rivera was convicted of two counts under the Pennsylvania Corrupt Organizations Statute, 18 Pa. C.S. § 911(h)(4), and one count each of possession of a controlled substance, possession of a controlled substance with intent to deliver,

criminal conspiracy to deliver a controlled substance, and criminal use of a communication facility. *Commonwealth v. Encarnancio-Rivera*, CP-06-CR-3152-2005, Trial Trans., September 12, 2006, at 213-214. In November 2006, Encarnacion-Rivera was sentenced to an aggregate term of imprisonment of nine to nineteen years. *Commonwealth v. Encarnacion-Rivera,* CP -06-CR-3152-05, Memorandum of Opinion (C.C.P. Berks Cty. Apr. 2, 2007), attached to Commonwealth's ("Comm.'s") Response, Ex. B at 1.

II. **Procedural History**

Encarnacion-Rivera timely filed an appeal to the Pennsylvania Superior Court and made three arguments: 1) the evidence was insufficient to support his conviction under the Pennsylvania Corrupt Organizations Statute; 2) the trial court abused its discretion by allowing the Commonwealth to use a chart depicting Encarnacion-Rivera's role in the drug ring during closing argument; and 3) the trial court abused its discretion by ruling that if Encarnacion-Rivera placed into evidence his spontaneous statement to arresting police officers that he had never sold drugs, the Commonwealth would be permitted to introduce into evidence his prior conviction for drug dealing. *Commonwealth v. Encarnacion-Rivera*, No. 2225 MDA 2006, Brief for Appellant, attached to Comm.'s Response, Ex. C at 5. The brief relied exclusively on state statutes and case law; Encarnacion-Rivera cited no federal authority. *Id.* On March 14, 2008, the Pennsylvania Superior Court, citing only state cases, statutes, and rules of evidence, affirmed Encarnacion-Rivera's conviction. *Commonwealth v. Encarnacion-Rivera,* No. 2255 MDA 2006 (Pa. Super. Ct. March 14, 2008), attached to Comm.'s Response, Ex. E.

Encarnacion-Rivera, seeking review in the Pennsylvania Supreme Court, again argued his claims under state law. The Pennsylvania Supreme Court denied review. *Commonwealth v. Encarnacion-Rivera*, No. 238 MAL 2008 (Sup. Ct. Pa. Oct. 8, 2008), attached to Comm.'s Response, Ex. G.

On December 8, 2008, Encarnacion-Rivera filed a pro se petition for *certiorari* to the United States Supreme Court; he raised the insufficient evidence and spontaneous statement claims and a racial profiling claim. He alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution. Petition for Writ, attached to Comm.'s Response, Ex. H at 8. On March 2, 2009, the Supreme Court denied *certiorari.*

On March 19, 2009, Encarnacion-Rivera filed a pro se petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541, *et seq.* In his petition, he made three ineffective assistance of counsel claims; one of the claims was that counsel was ineffective for failing to argue federal law and federal theory in his appeal. Letter of No Merit of January 31, 2010, attached to Comm.'s Response, Ex. J. Appointed counsel filed a *Finley* "no-merit" letter.[2] Regarding Encarnacion-Rivera's federal authority claim, counsel specifically stated, "[t]he defendant has not identified any specific 'federal theory' that he told his appellate counsel to raise or that his appellate counsel should have known to raise." *Id.* The PCRA court permitted counsel to withdraw and later dismissed Encarnacion-Rivera's petition. *Commonwealth v. Encarnacion-Rivera*, No. CP-06 CR-315205 (C.C.P. Berks Cty. Mar. 19, 2010); *Commonwealth*

---

[2] A *Finley* letter, also known as a "no merit" letter, is a letter brief submitted by counsel to a court explaining that there are no meritorious issues. *See Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1998). Counsel submitted his letter pursuant to *Commonwealth v. Finley*, supra, and *Commonwealth v. Turner,* 544 A.2d 927 (Sup. Ct. Pa. 1988).

*v. Encarnacion-Rivera*, No. CP-06-CR-3152-05 (C.C.P. Berks Cty. Apr. 14, 2010), attached to Comm.'s Response, Ex. K, L. Encarnacion-Rivera did not appeal.

III. **Habeas Corpus Petition**

Timeliness of a habeas corpus petition is governed by 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposing a one-year limitation period on an application for a writ of habeas corpus by a person in custody pursuant to judgment of state court. 28 U.S.C. § 2244(d)(1)(A-D). Under section 2244(d)(1)(A), the one-year period of limitation runs from;a7830000870a0;a7830000870a0 the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C.A. § 2244(d)(1)(A).

Encarnacion-Rivera's judgment became final on January 6, 2009, ninety days after the Pennsylvania Supreme Court issued its October 8, 2008 Order denying his petition for allowance of appeal. *Kapral v. United States,* 166 F.3d 565, 570 (3d Cir.1999) (a judgment does not become "final" until the ninety day time period for seeking *certiorari* review expires, even if defendant does not file such a petition).

If petitioner timely seeks state collateral review, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Were it not tolled, petitioner's limitations period would have ended on January 7, 2010. Encarnacion-Rivera timely filed a PCRA petition on March 19, 2009; that action was disposed of by the state trial court on April 14, 2010. Encarnacion-

Rivera's adjusted federal habeas filing deadline became February 2, 2011 (293 days after April 14, 2010). The federal habeas petition was filed June 30, 2010 and docketed July 7, 2010. It was timely under AEDPA.

Encarnacion-Rivera raises three grounds for relief in his petition: (1) insufficient evidence; (2) trial court abuse of discretion in permitting the use of a chart; and (3) trial court's abuse of discretion in ruling evidence of his prior conviction for drug dealing admissible. The court referred the petition to Magistrate Judge Jacob P. Hart for a R&R. Respondent filed a response in opposition to the petition. By order of December 2, 2010, Magistrate Judge Hart granted petitioner's Motion for Leave to File a Traverse to Answer. Judge Hart then reviewed Encarnacion-Rivera's three claims and recommended each be denied.

Encarnacion-Rivera objects to Judge Hart's conclusions concerning the claims of insufficient evidence and the trial court's abuse of discretion pertaining to the use of a chart.

**DISCUSSION**

Federal courts have jurisdiction over petitions for writs of habeas corpus challenging state confinement as violating the United States Constitution. 28 U.S.C. § 2241. The court reviews *de novo* those portions of the R&R to which a petitioner specifically objects. 28 U.S.C. § 636(b)(1)(C).

**I.     Exhaustion**

AEDPA requires a petitioner in state custody to exhaust all remedies available in the state courts before a federal court may grant a habeas petition. 28 U.S.C. § 2254(b)(1). In Pennsylvania, a habeas petitioner exhausts a claim by raising it either on direct appeal or in a

PCRA petition. *See Castille v. Peoples*, 489 U.S. 346, 351; *Holloway v. Horn*, 355 F.3d 707, 718 (3d Cir. 2004). The petitioner must present the claim to the Pennsylvania Superior Court.[3]

If a state court expressly decides a claim, then the petitioner has exhausted it. *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982). "[I]t must be evident from the state court's opinion alone that it has considered an issue." *Id.* If the state court opinions are silent on the issue, then the habeas court must examine the briefs to determine whether the petitioner raised the claim in the state courts. *Id.* The petitioner must have "fairly presented" the federal claim to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

A petitioner fairly presents a claim if he or she raises the claim in a manner that puts the state courts on notice that a federal claim is being asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The applicant need not cite "book and verse" of the United States Constitution, but the factual and legal substance of the federal habeas corpus claim must be equivalent in substance to the claim raised in the state courts. *Id.* A state court is put on notice that a federal claim is being presented through a petitioner's: (a) reliance on federal cases employing constitutional analysis; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular it calls to mind a specific right protected by the Constitution; or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless*, 172 F.3d at 261; *accord Nara v. Frank*,

---

[3] In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), the United States Supreme Court held that a petitioner must also present his or her claim in a petition for discretionary review to the state supreme court if doing so is an established part of the state's appellate review process. *Id.* at 845. On May 9, 2000, the Pennsylvania Supreme Court ordered that a petitioner in Pennsylvania need *not* seek discretionary review to exhaust state remedies. Order No. 218. The Third Circuit Court of Appeals recognizes the validity of this order, *see Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004), but it does not apply retroactively, *Wenger v. Frank*, 266 F.3d 218, 225 (3d Cir. 2001). Order No. 218 applies to Encarnacion-Rivera because his appeals began in 2006.

7

488 F.3d 187, 198 (3d Cir. 2008). It is not sufficient that a petitioner made a "somewhat similar state law claim." *See McCandless*, 172 F.3d at 261 (petitioner's prosecutorial misconduct and hearsay claims were not fairly presented because petitioner raised them as state evidentiary challenges rather than violations of federal law); *Keller v. Larkins*, 251 F.3d 408, 413-16 (3d Cir. 2001) (due process claim was not fairly presented because it was presented in state court as a matter of state evidentiary law).

II.     **Insufficiency of Evidence**

Encarnacion-Rivera did not explicitly raise his insufficient evidence claim as a federal claim in his state court petition. Nonetheless, a petitioner who raises a state law-based insufficient evidence claim on direct appeal may be found to have exhausted his federal due process claim. *See Evans v. Ct. Common Pleas, Delaware Cty.*, 959 F.2d 1227 (3d. Cir. 1992) (a petitioner may be found to have satisfied the requirements for exhaustion if the substance of the state law-based insufficient evidence claim presented in the direct appeal and the federal claim in the habeas petition are sufficiently similar). The relevant question is whether the insufficient evidence claim qualifies as an assertion of a due process claim in terms so particular as to call to mind a specific right protected by the Constitution. *Id*. at 1232-333 ("the test for insufficiency of the evidence is the same under both Pennsylvania and federal law," and the method of analysis of the federal claim is readily available to the state court). Encarnacion-Rivera raised a state law-based insufficient evidence claim in his direct appeal that called to mind due process rights; the claim is deemed exhausted, and the merits will be addressed.

A petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly

8

established Federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2).

Due Process requires that a person can be convicted of a crime only if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *Sullivan v. Cuyler,* 723 F.2d 1077, 1083-84 (3d Cir.1983). The law of Pennsylvania is the same. *See Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106, 1112 (Pa.Super. Ct. 1988).

Under Pennsylvania's Corrupt Organizations Statute: "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 Pa. C.S.A. § 911(b)(3). Under the statute, "racketeering activity" includes drug dealing; a "pattern of racketeering activity" is defined as a "course of conduct requiring two or more acts of racketeering activity." 18 Pa.C.S. § 911(h)(4). The statute defines the term "enterprise" as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S. § 911(h)(3).

At petitioner's trial, the jury heard from law enforcement officials who detailed the operation of the cocaine-distribution ring with which Encarnacion-Rivera associated. There was evidence that Encarnacion-Rivera purchased cocaine from ring-leader Blanco-Garcia on at least two occasions and that Blanco-Garcia spoke to Encarnacion-Rivera about drugs and related

9

"jobs" on multiple occasions. An expert testified that the amount of cocaine purchased by Encarnacion-Rivera meant it was likely for distribution and not personal use. The police executed a search warrant on Encarnacion-Rivera's house, where the police confiscated seven thousand dollars in cash; at that time, Encarnacion-Rivera had no discernible source of income. Encarnacion-Rivera also previously lived in Reading, Pennsylvania near Blanco-Garcia; the two spoke on the phone in a carefully guarded, coded language. N.T. at 198.

The state court decisions include lengthy, thorough discussions of the evidence presented at trial. *Commonwealth v. Encarnacion-Rivera,* No. CP-06-CR-3152-05 (C.C.P. Berks Cty. April 2, 2007); *Commonwealth v. Encarnacion-Rivera,* No. 2225 MDA 2006 (Sup. Ct. Pa. March 14, 2008). Both opinions found there was direct and circumstantial evidence sufficient to establish Encarnacion-Rivera engaged in conspiracy and more than one racketeering act.[4] Under AEDPA, a federal court must give increased deference to the factual findings and legal determinations of the state court. *Werts v. Vaughn,* 228 F.3d 178, 195 - 96 (3d Cir. 2000) (factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence); 28 U.S.C. § 2254(e)(1).

The state court adjudications of petitioner's claims did not result in decisions contrary to, or unreasonable applications of, clearly established federal law as determined by the Supreme Court of the United States. A rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the facts presented at trial.[5] The adjudications by the

---

[4] The trial court mistakenly attributed a large drug transaction to petitioner in its written opinion. This confusion did not arise at trial, and the mistake had no effect on the jury. The appellate court recognized the error in its opinion on direct appeal; the trial court's mistake did not effect the treatment of Encarnacion-Rivera's claims in state court.

[5] In arguing there was insufficient evidence to support his conviction, petitioner cites to the affidavit of Denny Arias ("Arias"), attached to his "Traverse." According to the affidavit, the $7000 police confiscated from Encarnacion-Rivera's house belonged to Arias and not petitioner. It does not appear Encarnacion-Rivera ever raised this issue

state courts were based on reasonable determinations of the facts in light of the evidence presented. Petitioner's claim that the evidence at trial was insufficient to support his conviction under the Pennsylvania Corrupt Organizations Statute is without merit, and his objection will be overruled.

III. **Chart**

Petitioner argues the trial court abused its discretion by allowing the Commonwealth to use a chart, never admitted in evidence, during its closing argument. He argues the chart, depicting his role as central in the drug ring, resulted in a trial that was fundamentally unfair in violation of due process.

This is not a cognizable claim in a federal habeas corpus petition because it concerns only a state judge's application of state evidentiary law. In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States; a federal habeas court may not reexamine state questions. *Estelle v. McGuire*, 502 U.S. 62 - 68 (1991); *Geschwendt v. Ryan,* 967 F.2d 877, 889 (3d Cir. 1992), *cert. denied* 506 U.S. 977 (1992). Petitioner challenged the chart in his state court proceedings, but he did not give the state court "fair notice" that he was asserting a federal constitutional claim rather than a violation of state rules of evidence.

Encarnacion-Rivera did not fairly present this as a due process claim to the state court. Encarancion-Rivera argues that his use of the phrase "not harmless beyond a reasonable doubt"

---

prior to the "Traverse." Nonetheless, even without the evidence of confiscated money, it is clear that after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

11

in his appellate brief was sufficient to put the state court on notice of a federal claim. This court disagrees. Encarnacion-Rivera's brief cited no cases in which evidentiary issues were analyzed under federal authority; his efforts were not evocative of due process rights under the United States Constitution. Petitioner did not articulate this evidentiary issue as a federal claim, nor was it analyzed by the state court as a federal claim. *Keller v. Larkins*, 251 F.3d 408, 413-16 (3d Cir. 2001) (due process claim was not fairly presented because it was presented in state court as a matter of state evidentiary law). The federal claim was not exhausted in state court, and the petitioner's objection will be overruled.

IV. **Evidentiary Hearing**

There is no reason to conduct an evidentiary hearing. *See* **28 U.S.C**. **§** 2254(e)(AEDPA permits evidentiary hearings on habeas review only in limited circumstances). The court has the transcript of Encarnacion-Rivera's trial, on which his claims for relief are based. The request for a hearing will be denied. Petitioner's objections will be overruled and his habeas corpus petition will be denied. An appropriate order follows.